UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KEVIN HALL,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>  Defendant. | **1:16-cv-1153 GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JOHN KEVIN HALL AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY** |

**I.     INTRODUCTION**

Plaintiff, John Kevin Hall ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 12, 16 and 17). Upon a review of the entire record, the Court finds that the ALJ did not apply the correct legal standards and the decision is not supported by substantial evidence. Accordingly, the Court GRANTS Plaintiff's appeal.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background/Plaintiff's Testimony

Plaintiff attended special education while in school. AR 37-38; 233-234. He previously received disability benefits which were awarded at the initial stages of his application.[4] AR 66; 189-190. After high school, he received job placement services at the Department of Rehabilitation. AR 39; 66; 231-232. He obtained a job at Wal-Mart and worked as a stocker/janitor for approximately thirteen years. AR 41-42; 71; 195. His disability benefits were terminated. AR 188-189. He testified that he quit his job after taking a medical leave due to his inability to handle stress at work. AR 42-43. Specifically, he reported that co-workers were making fun of him and his boss was threatening to fire him. AR 42-43. He went on unemployment and tried looking for other work but was unable to get hired at another job. AR 43.

In October 2012, Plaintiff filed an application for DIB alleging disability beginning August 5, 2010 (his last date of employment) due to learning disabilities, depression, an impulse disorder, lower back pain, and ulcers. AR 13; 43; 177-180; 193. The parties agree that Plaintiff properly exhausted his administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 12, pg. 2 and Doc. 16, pg. 5). Therefore, this appeal is a review of Administrative Law Judge Andrew Vern's ("ALJ") decision issued on February 2, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 13-22.

### B. Summary of the Medical Record

*1. Treatment Notes*

In 2010 and 2011, Dr. Terrill E. Brown, M.D., wrote a prescription permitting Plaintiff to grow and use medical marijuana through March 2012. AR 240-249; 262. Plaintiff reportedly

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 6 and 8).
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] It is unclear when or on what basis disability was granted as the AR indicates that Plaintiff's file was destroyed. AR 189-190.

2

used marijuana for stress, headaches, and to help him sleep. AR 247.

In September 2012, Plaintiff presented to Tulare Mental Health Clinic ("TMHC") with stress, panic attacks, insomnia, and angry outbursts. AR 257-264. He reported using marijuana to control his anger. AR 259.[5] On examination, he was poorly groomed but he made good eye contact and was cooperative; he was fully oriented in all spheres; his short and long term memory were normal; his mood and affect were normal; his speech was fluent; his thought processes were rambling but coherent; his thought content was appropriate; and his intellectual functioning was rated as below-average to average. AR 259-260. It was noted that he rambled on about past events that sometimes had no relevance to the question asked or were loose associations. AR 260. He was diagnosed with anxiety disorder, polysubstance dependence, and rule out intermittent explosive disorder. AR 263. It was recommended that he seek services with the Family Health Care Network since he did not meet the criteria for services at TMHC. AR 262. There is no indication that Plaintiff received treatment.

### 2. Relevant Medical Opinions

On February 28, 2013, Dr. Fariba Vesali, M.D., performed a consultative examination. AR 282-284. Plaintiff's chief complaint was intermittent back pain. AR 282. On examination, Plaintiff was alert and in no acute distress; he walked with a normal gait; he had normal ranges of motion in his spine and extremities; there was no tenderness or pain in his spine; he had normal motor strength, grip strength, and muscle bulk and tone; and his sensation and reflexes were intact. AR 283-384. Dr. Vesali opined that Plaintiff had no limitations in his ability to walk, stand, sit, lift, or carry, and he had no postural, manipulative, or environmental limitations. AR 284.

On February 25, 2013, Dr. Lance A. Portnoff, Ph.D., performed a consultative examination. AR 273-278. Dr. Portnoff reviewed records from TCMH. AR 273-274. Plaintiff presented with mild to moderate anxiety and depression. He made fair eye contact; his speech was mildly pressured but prompt and spontaneous; his language comprehension was grossly intact; his thought processes were mildly rambling but coherent; and he was alert and cooperative. AR 19-20, 275. On WAIS-IV testing, Plaintiff achieved a full scale IQ score of 64. AR 275. The

---

[5] Plaintiff testified that he continued to smoke marijuana three times a day after his medical marijuana license expired. AR 54. He reported that his license expired because he could not afford the $100 fee to renew it. AR 53.

3

score was derived from a subset of scores including verbal comprehension of 61, perceptual reasoning of 73, working memory of 66, and processing speed of 79. AR 275. On achievement testing, Plaintiff was found to have the equivalent of a 1.7 grade level in word reading; a 1.2 grade level in spelling; and a 3.5 grade level in math computation. AR 276. Dr. Portnoff diagnosed Plaintiff with mood disorder due to seizure disorder (provisional); major depressive disorder (recurrent) with mild to moderate anxious features; a learning disorder not otherwise specified; polysubstance abuse in full remission; and borderline intellectual functioning. AR 277. Dr. Portnoff assigned Plaintiff a Global Assessment Functioning of 54 reflecting moderate symptoms or impairments. AR 277.

On March 28, 2013, non-examining state agency physician Dr. Pamela Hawkins, Ph.D., completed a mental residual functional capacity assessment. AR 94-96. Dr. Hawkins opined that Plaintiff could remember basic workplace locations and procedures; he was limited to simple one- to two-step instructions; he could maintain concentration, persistence, and pace for simple tasks; he would be best suited to work with minimal social demands and no public contact; he would be able to work around others but not in a position that required collaboration or extensive interpersonal interactions; he could travel; make practical decisions; avoid common hazards; and manage ordinary workplace stress. He could adapt to a low demand work setting consistent with simple work. AR 95-97. Non-examining state agency physician Dr. Dan Funkenstein, M.D., assessed similar limitations on July 3, 2013. AR 111-113.

### III.     THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.[6] 20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work[7]; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## IV. **SUMMARY OF THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2015. AR 15. He noted that Plaintiff had not engaged in substantial gainful activity since August 5, 2010. AR 15. At step two, the ALJ identified anxiety disorder and borderline intellectual functioning as severe impairments. AR 15. He found that Plaintiff's sleep-related breathing disorder, hypertension, obesity, alcohol and substance abuse disorders, and "other arthropathies" were not severe impairments. AR 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 14. However, the ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, except that Plaintiff should be limited to working in a position that does not require collaboration or extensive interpersonal interactions. The ALJ also found that Plaintiff would be able to adapt

---

[6] All references in this decision are to the 2015 regulations which were the regulations in effect at the time of the ALJ's decision dated February 2, 2015.

[7] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 CFR § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

to a low demand work setting consisting of simple work and remembering simple one and two-step instructions; that he could maintain concentration, pace and persistence for simple tasks with minimal social demands; and that he should have no public contact. AR 18-20. In making this finding, he gave partial weight to Dr. Portnoff's opinion and the greatest weight to the non-examining state agency physicians' opinions. AR 19-20. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 18-20.

Given the above, at step four, the ALJ found Plaintiff could perform his past relevant work as a stocker/maintenance worker and janitor for Walmart because this work did not require performance of work-related activities precluded by Plaintiff's RFC. AR 20-21. The ALJ alternatively found that Plaintiff was able to work as a laundry worker, a warehouse worker, and a kitchen helper. AR 21-22. The ALJ therefore concluded Plaintiff was not disabled. AR 22.

## V. **THE ISSUES PRESENTED**

Plaintiff argues that the ALJ committed reversible error by failing to find that Plaintiff meets the Listing Impairment under 12.05C for intellectual disability. Specifically, he contends that: (1) he has a full scale IQ of 64; (2) that deficits in his adaptive functioning manifested themselves prior to the age of twenty-two; and (3) that the ALJ found that Plaintiff suffers from anxiety as a severe impairment which *per se* qualifies as an impairment imposing additional and significant work-related limitation of function under the remaining prong of the listing. He also argues that the ALJ committed reversible error by discounting the examining neuropsychologist's opinion (specifically that Plaintiff has marked limitations in his ability to deal with unexpected changes in a routine work setting), and that the ALJ's credibility analysis is not supported by substantial evidence. He requests that the case be remanded for a payment of benefits, or alternatively, that the case be remanded for further consideration of these issues. (Doc. 12, pgs. 5-12; Doc. 17, pgs. 1-4). In Opposition, the Commissioner argues that: (1) the ALJ properly considered Listing 12.05C; (2) the ALJ properly evaluated the medical evidence; and (3) his credibility analysis is supported by substantial evidence. The Commissioner argues that the ALJ's findings should be affirmed, or alternatively, if the Court finds error, the case should be remanded for further proceedings rather than an award of benefits. (Doc. 16, pgs. 10-21).

## VI.     THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VII.     DISCUSSION
### A. The ALJ Improperly Concluded that Plaintiff Did Not Meet the Listing Impairment 12.05C at Step Three.

*1. Legal Standard*

The listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Physical and mental conditions contained in the listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).

At step three, the ALJ must evaluate the claimant's impairments to determine whether he or she meets or medically equals any of the impairments contained in the listings. If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. *See* 20 C.F.R. § 404.1520(d). The plaintiff bears the burden of proving that an impairment or combination of impairments meets or equals *all* of the criteria of a listing. *Sullivan*, 493 U.S. at 530-531 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria") (emphasis in original); *Kennedy v. Colvin*, 738 F. 3d 1172, 1174 (9th Cir. 2013) (same); 20 C.F.R. § 404.1525(d) ("impairment(s) cannot meet the criteria of a listing based only on a diagnosis;" impairments must satisfy "all of the criteria in the listing");

The ALJ must consider the relevant evidence in determining whether a claimant's

impairment or impairments meet or equal one of the specified impairments set forth in the Listings. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." *Lewis*, 236 F.3d at 512; *see also, e.g.*, *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (noting that the ALJ's unexplained finding at step three was reversible error). However, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude that an impairment could meet or equal a Listing. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Listing 12.05 for mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.[8] Specifically, paragraph C requires that a claimant demonstrate: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. "In cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, Appx. I § 12.00(D)(6)(c) (Intelligence tests) (emphasis added). The Listing explains: "For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function,' even if you are unable to do your past work because of the unique features of that work." *Id*. Thus, a plaintiff meets Listing 12.05C's requirements if: (1) the evidence demonstrates deficits in adaptive functioning initially manifested during the developmental period, *e.g*. supports onset of the mental impairment before age 22; (2)

---

[8] The 12.05 Listing criteria were amended effective January 17, 2017, along with all of the other mental health listings. *See*, *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732.(September 26, 2016) (amending 20 C.F.R § 404.1520a(b)(3)).  However, the Court applies the 2015 regulations in this decision as these were the regulations in effect at the time of the ALJ's decision.

8

the plaintiff has an IQ score between 60 and 70, and (3) the plaintiff demonstrates a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Kennedy*, 738 F. 3d at 1174.

   *2. Discussion*

When evaluating the 12.05 Listings, the ALJ stated the following:

> Paragraph B criteria are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. IQ testing indicated claimant to have a Verbal Comprehension score of 61, Perceptual Reasoning Score of 73, Working Memory Scale of 66, Processing speed of 79, and a Full Scale IQ of 64.
>
> Finally, the listing 12.05 "paragraph C' criteria was not met because the claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Despite the claimant's level of intellectual functioning, he was capable of holding a job for many years and completed high school. AR 17-18.

Thus, in the context of disqualifying Plaintiff for Listing 12.05B, the ALJ recognized that Plaintiff had a full scale IQ of 64. Similarly, the ALJ found that Plaintiff would not qualify for 12.05C because despite his level of intellectual functioning, he was capable of holding a job for many years and completed high school. AR 17-18. In support of the ALJ's decision, the Commissioner argues that the ALJ properly considered that Plaintiff has worked for many years, completed school, and only had mild restrictions in activities in daily living. The Defendant also contends that finding Plaintiff meets the listing contradicts the statutory definition of disability under the Social Security Act, which requires that a claimant have a medically determinable impairment of such severity that he is unable to perform his past work or engage in any other kind of work. (Doc. 16, pgs. 10-13). However, whether Plaintiff completed high school or worked is not the standard for determining whether he has a mental impairment that imposes an additional and significant work-related limitation of function under 12.05C. The Ninth Circuit has held that a person with a severe impairment at step two of the disability analysis, apart from decreased intellectual functioning, establishes this prong of 12.05C. *Fanning v. Bowen*, 827 F2d 631, 633 (9th Cir. 1987) ("An impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."). Several district courts have also held that the identification of a severe impairment at step two

establishes this prong of the 12.05C analysis. *See Rasmussen v. Berryhill*, no. 2:15-0079-DB, 2017 WL 416130 *4 (E.D. Ca. Jan. 30, 2017) (citing several cases interpreting Fanning and the regulations and concluding that an ALJ's finding of a severe impairment at step two establishes the second prong of 12.05C); *Fatheree v. Colvin*, no. 1:13-cv-01577 SKO, 2015 WL 1201669 * 13 (E.D. Cal. March 16, 2015) (finding a plaintiff with additional severe impairments of degenerative disc disease, obesity, asthma, and depression established this prong of the listing requirements); *Woods v. Astrue*, No. CIV 2:10–2031 GEB EFB P, 2012 WL 761720, at *4 (E.D. Cal. March 7, 2012) (finding that the plaintiff met Listing 12.05C's second prong given the ALJ's finding that plaintiff had "severe" impairments at step two); *Forsythe v. Astrue*, No. 1:10-cv-1515- GSA, 20120 WL 217751 (E.D. Cal. Jan. 24, 2012) (same); *Rowens v. Astrue*, No. CIV 2:09–0163 GGH, 2010 WL 3036478, at *2–4 (E.D. Cal. Aug.2, 2010) ("[I]n this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the § 12.05(c) listing.")

In this case, the ALJ identified borderline intellectual functioning *and anxiety disorders* as severe impairments at step two. AR 15. (emphasis added). In doing so he stated, "[t]hese impairments are established by the medical evidence and are 'severe' within the meaning of the regulations because they cause a significant limitation in the claimant's ability to perform basic work activities for at least 12 months …" AR 15. Thus, the prong under Listing 12.05C requiring that Plaintiff demonstrate a physical or other mental impairment imposing an additional and significant work-related limitation of function is met.

Similarly, the Plaintiff has met the other criteria of the listing. The Commissioner has not contested that Plaintiff has a full IQ of 64 thereby establishing the first prong. AR 18; 275-276. Moreover, Plaintiff also established that deficits in adaptive functioning manifested before age the age of twenty-two. Evidence establishing this prong can be circumstantial and can include difficulties with reading, writing and attendance in special education classes. *Jones v. Colvin*, 149 F. Supp., 3d 1251, 1260 (D. Or. Feb. 29, 2016); *McGrew v. Colvin*, 2015 WL 1393291, at *6 (D. Or. Mar. 25, 2015); *Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011); *Payne v. Astrue*, 2010 WL 654319, at *11 (D.Ariz. Feb. 23, 2010). It is uncontested that Plaintiff received special education services in school. AR 37-38; 233-234. He also received disability in

the past. AR 66; 189-190. Moreover, Plaintiff's psychological testing is consistent with having difficulties in school prior to the age of 22 – the 2013 psychological testing indicated he had at a 1.7 grade level in reading; a 1.2 grade level in spelling; and a 3.5 grade level in math. AR 276. There is nothing in the administrative record suggesting that an intervening event or medical condition after the age of twenty-two caused these deficiencies. Because Plaintiff has established all three prongs of 12.05C, he has demonstrated that he is disabled under the act. The ALJ's analysis and reliance on Plaintiff's work abilities as a basis to deny benefits is reversible error - physical and mental conditions contained in the listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." *Lester*, 81 F.3d at 828; See also, 20 C.F.R. § 404.1525(a) (the Listings describe specific impairments that are considered "severe enough to prevent and individual from doing any gainful activity regardless of his or her age, education, or work experience.")

Given the Court's disability finding, Plaintiff's other arguments need not be addressed. This Listing is established even accepting the ALJ's interpretation of the medical evidence, as well as his assessment of the severity of Plaintiff's subjective complaints. The Plaintiff's overall IQ of 64; the identification of his anxiety disorder as a severe impairment; coupled with his receipt of special education services in school; his low grade level equivalencies in reading, math and spelling; and his prior receipt of disability benefits establishes that *all* of the requirements of Listing 12.05C have been met.

**VIII. REMAND**

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits, or whether this action should be remanded to the Commissioner for further administrative proceedings. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir.2014). Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F. 3d at 1020 (9th Cir. 2014). Conversely, a remand for an award of benefits is appropriate when no further purpose would be served by further

administrative proceedings, or when the record has been fully developed and there are no outstanding issues that must be resolved before a proper disability determination can be made. *Treichler,* 775 F. 3d at 1100.

Here, a remand for an immediate award of benefits is appropriate. As explained above, the record is fully developed and further administrative proceedings would serve no useful purpose. Therefore, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

**IX. CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's did not apply the correct legal standards and the decision is not supported by substantial evidence. Accordingly, this Court GRANTS Plaintiff's appeal in full. The case is remanded to the Commissioner of Social Security for an award of benefits. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff John Kevin Hall, and against Nancy A. Berryhill, Commissioner of Social Security, and to close this action.

IT IS SO ORDERED.

Dated: **January 29, 2018**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE